IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HUDSON INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Case No. 23-CV-316-MTS |
| | ) |
| RONNI TOWNSELL and ARKK TRUCKING, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is Plaintiff Hudson Insurance Company's Motion for Summary Judgment with Supporting Brief. (Docket No. 33). Upon the Court's review and consideration of the filings of the parties, the Motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

### Relevant Facts and Background

In November 2019, James Waller ("Waller"), an employee of Defendant Arkk Trucking, Inc. ("Arkk"), agreed to drive a used "boom truck" owned by Kirby-Smith Machinery, Inc. ("Kirby-Smith") from Oklahoma to Utah on Kirby-Smith's behalf. (Docket Nos. 33 at 3; 33-3 at 1). On or about November 24, 2019, the boom truck was involved in a single-vehicle accident in or around Wanship, Utah. (Docket Nos. 33 at 3; 41 at 2). Defendant Ronni Townsell ("Townsell") was a passenger in the boom truck and allegedly sustained injuries resulting from the accident. *Id.*

Plaintiff Hudson Insurance Company ("Hudson") issued commercial auto insurance, policy number BUI-005956-03 ("the Policy"), to Arkk for the policy period of April 13, 2019, to April 13, 2020. (Docket Nos. 33 at 3; 33-5 at 5; 41 at 3). In addition to general commercial liability coverage, the Policy also contains a Motor Carrier Coverage Form Declaration, or MCS-90 Endorsement ("the Endorsement"). (Docket Nos. 33 at 3; 33-5; 41 at 3).

On October 18, 2021, Townsell filed suit against Waller and Arkk in the Third Judicial District Court of Summit County, Park City Department, State of Utah ("the Underlying Suit"). (Docket Nos. 33 at 2; 33-1; 41 at 2). In response, Hudson filed its Complaint in this Court on July 25, 2023, naming Arkk and Townsell as defendants, and seeking a declaratory judgment as to its obligations under the Policy and the Endorsement regarding the Underlying Suit. (Docket No. 2). On October 5, 2023, Townsell amended her Original Complaint, adding Kirby-Smith as a defendant. (*See* Docket No. 33-2). She asserted claims of negligence against both Waller and Arkk. *Id.* at 2-3. She also asserted claims of vicarious liability and negligent hiring/training/supervision against Arkk and a claim of negligent entrustment against Kirby-Smith. *Id.* at 3-5. Hudson then filed a First Amended Complaint on November 8, 2023, wherein it added Kirby-Smith as a defendant. (Docket No. 10). On May 3, 2024, however, Hudson filed a Notice of Dismissal, dismissing Kirby-Smith from this action. (Docket No. 44).

Through its Motion for Summary Judgment and Supporting Brief, Hudson seeks judicial declarations pursuant to 28 U.S.C. § 2201, asserting that: (1) "Hudson has no duty to make any indemnity payment to or on behalf of any party to the Underlying Suit"; (2) "Hudson has no duty to defend any party in connection with the Underlying Suit"; and (3) "Hudson has no duty pursuant to the MCS-90 Endorsement contained in or attached to the [P]olicy it issued to Arkk to pay Townsell any judgment she secures in the Underlying Suit[.]" (Docket No. 33 at 13). Arkk responded, indicating it "does not have nor know of any facts that would preclude Hudson from obtaining [s]ummary [j]udgment." (Docket No. 38). Townsell contends summary judgment is inappropriate because the Endorsement requires Hudson to pay any eventual final judgment she may recover against Arkk. (Docket No. 41). By reply, Hudson asserts it has no obligation for any judgment in the Underlying Suit as the Endorsement has not been triggered. (Docket No. 42).

**<u>Applicable Standards</u>**

A.      **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Applied Genetics v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also* Fed. R. Civ. P. 56(c)(1)(A), (e)(2), (e)(3). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Thus, "[i]n a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). Although a court may consider materials in the record other than those cited, Fed. R. Civ. P. 56(c)(3), the inquiry is whether the facts and evidence identified by the parties present "a

3

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**B.  Declaratory Judgment**

Under the Declaratory Judgment Act, courts are permitted to, "[i]n a case of actual controversy[,] . . . declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a).  "[W]hat makes a declaratory judgment action a proper resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109-10 (10th Cir. 2010) (citation omitted).  Thus, the question for the Court is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Ripeness is one aspect of the "sufficient immediacy and reality" requirement for the issuance of a declaratory judgment. *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1314 (10th Cir. 2024).  The question is "whether events have progressed far enough to be sure that declaratory judgment will resolve a live dispute with practical consequences." *Id*. (citing *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)). When examining ripeness, the Court considers two factors: "(1) 'the fitness of the issue for review,' and (2) 'the hardship to the parties' of withholding judicial review." *Id*. (quoting *Tex. Brine Co., LLC & Occidental Chem. Corp.*, 879 F.3d 1224, 1229-30 (10th Cir. 2018)).  The "fitness for review" factor considers "whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed[,]" and also "whether the case

4

involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all[.]" *Id.* (quotations omitted). The latter consideration "preclude[s] a finding of ripeness." *Id.* (citing *New Mexicans for Bill Richardson*, 64 F.3d at 1499). Additionally, the "hardship" factor considers "whether withholding review will place the parties in a direct and immediate dilemma." *Id.* (quotation omitted).

## Discussion

A.   **Duty to Defend and Duty to Indemnify**[1]

"[A]n insurance policy is a contract. When its terms are unambiguous and clear, the employed language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions." *Bituminous Cas. Corp. v. Cowen Const., Inc.*, 55 P.3d 1030, 1033 (Okla. 2002) (citing *Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1104 (Okla. 1993)). As such, "neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).

Contracts in the form of "[c]ommercial insurance policies 'contain[] two basic duties—the duty to defend and the duty to indemnify its insured.'" *Ohio Sec. Ins. Co. v. B&B Heat & Air, Inc.*, 642 F. Supp. 3d 1282, 1288 (N.D. Okla. 2022) (quoting *First Bank of Turley v. Fid. & Deposit*

---

[1] Although the parties do not dispute whether a judicial declaration as to Hudson's duty to defend and duty to indemnify is proper, the Court finds such a declaration appropriate "before [the issue] ripen[s] into violations of law or a breach of duty." *Essex Ins. Co. v. Sheppard & Sons Const., Inc.*, No. CIV-12-1022-D, 2013 WL 4829128, at *2 (W.D. Okla. Sept. 9, 2013) (citing *United States v. Fisher-Otis Co., Inc.*, 496 F.2d 1146, 1151 (10th Cir. 1974)). "A declaratory judgment action has been deemed an appropriate means to determine an insurer's prospective responsibility or duty under a policy." *Id.* (citing *Western Cas. and Surety Co. v. Teel*, 391 F.2d 764 (10th Cir. 1968)).

*Ins. Co. of Md.*, 928 P.2d 298, 302-03 (Okla. 1996)). "Under Oklahoma law, the duty to defend is distinct from and broader than the duty to indemnify." *Automax Hyundai S. L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 804 (10th Cir. 2013).

"[A]n insurer has a duty to defend if the facts raise the mere 'potential of liability.'" *Id.* at 805 (citing *First Bank of Turley*, 928 P.2d at 303). "To have the 'potential of liability,' the 'complaint [must] state a cause of action that gives rise to the possibility of a recovery under the policy; there need not be a probability of recovery.'" *Idg, Inc. v. Cont'l Cas. Co.*, 275 F.3d 916, 920 (10th Cir. 2001) (quoting 7C Appleman, Insurance Law & Practice § 4683.01 at 67 (Berdal ed. 1979)). Therefore, the defense duty is determined based on the "information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action." *Ohio Sec. Ins. Co.*, 642 F. Supp. 3d at 1288 (quoting *First Bank of Turley*, 928 P.2d at 303-04). If the duty to defend is triggered, then an insurer is required to defend its insured against all claims in a lawsuit. *Id.* (citing *Automax*, 720 F.3d at 806). However, an insurer's duty to indemnify is limited to "claims falling within the policy's scope." *Utica Mut. Ins. Co. v. Voyles*, 277 F. App'x 809, 816 (10th Cir. 2008).

According to Hudson, the Policy provides for certain liability coverage for bodily injuries "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto[.]'" (Docket No. 33 at 9-10) (citing Docket No. 33-5 at 57). Therefore, Hudson argues, because the accident in the Underlying Suit did not involve a "covered auto," the Policy does not provide coverage for the accident. *Id.* As such, Hudson has no duty to defend or indemnify Arkk. *Id.* Neither Arkk nor Townsell dispute that the Policy does not provide coverage for the accident in the Underlying Suit. (*See* Docket Nos. 38; 41 at 8).

The Policy states, in relevant part, that Hudson "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Hudson] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Hudson] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (Docket No. 33-5 at 16). The Motor Carrier Coverage Form, which dictates which autos are covered under the Policy, includes autos designated by Symbol 67. *See id.* at 52. Symbol 67, or "specifically described autos," is defined as "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown . . . ." *Id.* at 56. The boom truck involved in the accident, which Arkk did not own, is not listed on Item Three of the Declarations. *Id.* at 52-55. As such, it was not a covered auto as defined by the Policy. Therefore, Townsell's alleged bodily injuries were not a result of an accident involving "the ownership, maintenance or use of a covered 'auto'." *Id.* at 57.

Because the Policy does not provide liability coverage for the boom truck, Hudson has no duty to defend Arkk in the Underlying Suit. Moreover, Hudson has no duty to indemnify Arkk as the claims in the Underlying Suit do not fall within the scope of the Policy. Accordingly, no genuine dispute of material fact exists, and Hudson is entitled to a judicial declaration that it owes no duty to defend or indemnify Arkk in the Underlying Suit or any other litigation arising from the November 24, 2019, accident.

**B.      Applicability of the MCS-90 Endorsement**

The Motor Carrier Act of 1980 ("MCA") and the subsequent regulations promulgated by the Federal Motor Carrier Safety Administration "require interstate trucking companies to maintain insurance or another form of surety 'conditioned to pay any final judgment recovered

against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles.'" *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 870 (10th Cir. 2009) (quoting 49 C.F.R. § 387.301(a)).  For a motor carrier to operate, it must "provide proof of financial responsibility demonstrating that the motor carrier is 'adequately insured in order to protect the public from risks created by the carrier[']s] operations[.]'" *Herrod v. Wilshire Ins. Co.*, 499 F. App'x 753, 754-55 (10th Cir. 2012) (quoting *Yeates*, 584 F.3d at 875); *see also* 49 U.S.C. § 31139(b); 49 C.F.R. § 387.7(a).  "The minimum level of financial responsibility requirements apply only to 'for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce' and motor carriers transporting hazardous materials." *Id*. at 755 (quoting 49 C.F.R. § 387.7).

One method for interstate trucking companies to satisfy the requirement is to obtain an MCS-90 endorsement.  *Yeates*, 584 F.3d at 874.  "An MCS-90 endorsement is intended to eliminate [] the possibility of a denial of coverage by requiring the insurer to pay any final judgment recovered against the insured for negligence in the operation, maintenance, or use of motor vehicles subject to federal financial responsibility requirements, even though the accident vehicle is not listed in the policy." *Id*. at 870 (internal quotation marks omitted); *see also* 49 C.F.R. § 387.15.  "[T]he insurer's obligation under the MCS-90 endorsement [is] one of a surety rather than a modification of the underlying policy." *Id.* at 878.  "[A]n MCS-90 insurer's duty to pay a judgment arises not from any insurance obligation, but from the endorsement's language *guaranteeing* a source of recovery in the event the motor carrier negligently injures a member of the public on the highways." *Id*.  Thus, it serves as "a safety net in the event other insurance is lacking." *Id*. (citations omitted).

Hudson argues the Endorsement contained in the Policy is inapplicable to the accident for two reasons: (1) the boom truck does not fall within the requirements of the MCA because it was not transporting property and Arkk was not a "for-hire" motor carrier; and (2) there is other insurance available within the required federal limits to cover the boom truck and any judgment against Arkk in the Underlying Suit. (Docket Nos. 33 at 10-12; 42).  In response, Townsell asserts the Endorsement applies to the November 24, 2019, accident and "is triggered in the event that [she] obtains a judgment or settlement against Arkk Trucking" in the Underlying Suit.  (Docket No. 41 at 5, 6, 9).

The Tenth Circuit, however, describes the insurer's obligation under the MCS-90 endorsement as follows:

> *[W]hen an injured party obtains a negligence judgment against a motor carrier*, an insurer's obligation under the MCS-90 endorsement is not triggered unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent.  Once the federally-mandated minimums have been satisfied, however, the endorsement does not apply.

*Yeates*, 584 F.3d at 879 (emphasis added).  Moreover, the Endorsement contained in the Policy provides, in part, that:

> *[T]he insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured* for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the [MCA] regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

(Docket No. 33-5 at 88) (emphasis added).  Thus, although the parties concede the boom truck involved in the accident was not covered under the Policy, both *Yeates* and the Endorsement

9

provide that Hudson's obligation under the Endorsement is not triggered until Townsell obtains a final judgment against Arkk in the Underlying Suit.[2]

Here, because there is no final judgment in the Underlying Suit, the Court must determine whether the issues raised by Plaintiff are ripe for review.[3] Based on the information before the Court,[4] Plaintiff has failed to meet the "fitness for review" factor required for a finding of ripeness. *See Travelers*, 98 F.4th at 1314 (noting a finding of ripeness is precluded when "the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all"). Thus, the Court finds that any decision on the Endorsement's applicability to the accident is premature prior to a final judgment in the Underlying Suit. *See Progressive Northern Ins. Co. v. Spencer*, No. 13-CV-184-GKF-PJC, 2014 WL 1572404 (N.D. Okla. Apr. 18, 2014) (relying on the Tenth Circuit's holding in *Yeates* and noting that any determination of Progressive's obligation under the MCS-90 endorsement, even if raised, would not constitute a "justiciable controversy"

---

[2] The Court also notes that both Tenth Circuit cases cited in the parties' briefing involve circumstances when a judgment was entered (or a payment was made) at the time the court addressed the applicability of the MCS-90 endorsement. *See Herrod*, 499 F. App'x at 756-57 (noting the presence of an underlying state court judgment prior to the district court's determination on summary judgment that "Wilshire's MCS-90 obligation was triggered because Espenschied was a 'motor carrier' for purposes of the MCS-90 endorsement and the confessed judgment against Espenschied constituted a negligence judgment."); *Yeates*, 584 F.3d at 888 (noting that at the time of the lawsuit against Carolina Casualty, the Yeateses had already collected a payment of $750,000 from State Farm, which satisfied the public policy purposes underlying the MCS-90 endorsement, and precluded the Yeateses from recovering from Carolina Casualty because State Farm's payment satisfied the insured's minimum financial responsibility requirements under federal law).

[3] The Court acknowledges that Townsell did not raise the issue of ripeness regarding application of the Endorsement in her response. However, a court may raise the issue *sua sponte*. *Friends of Marolt Park v. U.S. Dep't of Transp.*, 382 F.3d 1088, 1093 (10th Cir. 2004).

[4] Neither party asserts that a final judgment (nor any offer of payment by any insurance company) has occurred in the Underlying Suit. In fact, other than the Underlying Suit's existence, the parties have not provided the Court with any details as to its status or any pending issues.

and "was not ripe because no judgment ha[d] been entered in the underlying case, nor ha[d] there been a determination that no other insurer provide[d] coverage for the accident or the insurance coverage [was] insufficient to satisfy the regulatory requirements"); *Lancer Ins. Co. v. L & Y Trucking LLC*, No. 1:23-CV-113-H, 2024 WL 2786049 (N.D. Tex. May 7, 2024) ("Because there has not been a final judgment recovered against the insured, or even a finding of liability against the insured, it is not clear whether a duty to pay under the endorsement will ever apply. Further, because the liability lawsuit has not been resolved, there remains an open question as to whether Lancer might be responsible. Therefore, the question of a payment obligation under the MCS-90 obligation is premature as well."). Moreover, the Court's decision that Hudson's arguments regarding the Endorsement are premature does not result in a "hardship to the parties," as withholding review will not create an "immediate dilemma" for them. *See Travelers*, 98 F.4th at 1314 (noting the "hardship" factor for ripeness considers "whether withholding review will place the parties in a direct and immediate dilemma") (quotation omitted).

Accordingly, the Court finds Hudson's request for a declaratory judgment regarding the Endorsement's application to the November 24, 2019, accident to be premature and not yet ripe for review. Hudson's Motion as it pertains to the Endorsement's application is therefore denied.

## Conclusion

For the reasons explained herein, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment. (Docket No. 33). The Court grants the Motion with respect to Hudson's duty to defend and duty to indemnify under the Policy, but denies the Motion with respect to the MCS-90 Endorsement.

**IT IS THEREFORE ORDERED** that pursuant to LCvR 41-1, the case is **ADMINISTRATIVELY CLOSED** pending either an order of the Court reopening the action, or until the case is dismissed with prejudice by stipulation of the parties.

**IT IS FURTHER ORDERED** that the parties advise the Court as to the status of the Underlying Suit by filing a status report with the Court within 120 days, or by **October 24, 2024**.

IT IS SO ORDERED this 26th day of June, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT